Docket No. 24-5185

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**v.**

**DAEKUN CHO,**

**Defendant-Appellant.**

---

On Appeal from the Judgment and Conviction in
District Court Case No. 23-cr-149-FLA
In the United States District Court for
the Central District of California
(Hon. Fernando L. Aenlle-Rocha, U.S. District Judge, Presiding)

# APPELLANT's REPLY BRIEF

KAREN L. LANDAU, CSB # 128728
Law Office of Karen L. Landau
1966 Tice Valley Blvd., #189
Walnut Creek, CA 94595-2203
(510) 501-2781
Attorney for Appellant
Daekun Cho

# TABLE OF CONTENTS

TABLE OF CONTENTS ..... ii

TABLE OF AUTHORITIES ..... iii

I. ARGUMENT IN REPLY ..... 1

A. The District Court Prejudicially Erred in Admitting Evidence of Uncharged Acts and Criminal Street Gang Affiliation. ..... 1

1. The District Court Abused Its Discretion In Admitting Evidence Of the Uncharged Shooting. ..... 1

2. The District Court Abused its Discretion in Admitting Evidence about the Grape Street Crips and Mr. Cho's Alleged Affiliation. ..... 6

3. The Court's Errors Prejudiced the Defense. ..... 9

B. The District Court Erred in Disallowing Significant Cross-Examination. ..... 11

C. The District Court Procedurally Erred by Imposing a Two-Level Upward Adjustment for Vulnerable Victim. ..... 13

II. CONCLUSION ..... 20

CERTIFICATE OF COMPLIANCE ..... 22

# TABLE OF AUTHORITIES

Supreme Court Cases

*United States v. Abel*, 469 U.S. 45 (1984) ........................................... 6, 9

Federal Circuit Cases

*United States v. Anderson,* 349 F.3d 568 (8th Cir. 2003) ....................... 14

*United States v. Anderson,* 741 F.3d 938 (9th Cir. 2013) ......................... 5

*United States v. Bengali,* 11 F.3d 1207 (4th Cir. 1993) .......................... 16

*United States v. Boem,* 2023 U.S. App. LEXIS 13245 (9th Cir. May 30, 2023) ........................................................................................ 5

*United States v. Bramble,* 641 F.2d 681 (9th Cir. 1981) .......................... 2

*United States v. Castaneda*, 239 F.3d 980 (9th Cir. 2001) ..................... 13

*United States v. Castellanos,* 81 F.3d 108 (9th Cir. 1996) ..... 14, 15, 19, 20

*United States v. Hess,* 106 F.4th 1011 (10th Cir. 2024) ......................... 14

*United States v. Hill,* 645 F.3d 900 (7th Cir. 2011) ............................... 18

*United States v. Luna,* 21 F.3d 874 (9th Cir. 1994) ................................. 4

*United States v. Matsumaru,* 244 F.3d 1092 (9th Cir. 2001) ................ 18

*United States v. McNamara,* 2025 U.S. App. LEXIS 14291 (6th Cir. June 9, 2025) ......................................................................... 14

*United States v. McCall,* 174 F.3d 47 (2d Cir. 1998) ............................. 15

*United States v. Mendoza,* 262 F.3d 957 (9th Cir. 2001) ....................... 17

*United States v. Mendoza-Prado,* 314 F.3d 1099 (9th Cir. 2002).......2, 10

*United States v. Prather,* 138 F.4th 963 (6th Cir. 2025) ........................14

*United States v. Robinson*, 119 F.3d 1205 (5th Cir. 1997) ......................18

*United States v. Rodriguez,* 766 F.3d 970 (9th Cir. 2014)........................6

*United States v. Schram,* 746 Fed. Appx. 688 (9th Cir. 2018) .................4

*United States v. Schweihs,* 971 F.2d 1302 (7th Cir. 1992) ...................2, 4

*United States v. Solorza,* 470 Fed. Appx. 669 (9th Cir. 2012)................17

*United States v. Tai,* 994 F.2d 1204 (7th Cir. 1993)................................3

*United States v. Takahashi*, 205 F.3d 1161 (9th Cir. 2000) ......................6

*United States v. Tkhilaishvili,* 926 F.3d 1 (1st Cir. 2019).......................3

*United States v. Veerapol,* 312 F.3d 1128 (9th Cir. 2002) ......................19

Rules

Fed. R. Evid. 403 ........................................................................4

Fed. R. Evid. 404(b) ........................................................... 1, 2, 6

Other Authorities

2025 *The Los Angeles Police Department, Federal Immigration Enforcement, Frequently Asked Questions,* available at https://www.lapdpolicecom.lacity.org/022525/BPC_25-049.pdf.........18

# I. ARGUMENT IN REPLY

## A. The District Court Prejudicially Erred in Admitting Evidence of Uncharged Acts and Criminal Street Gang Affiliation.

### *1. The District Court Abused Its Discretion In Admitting Evidence Of the Uncharged Shooting.*

The government contends that the district court correctly admitted the evidence of the shooting, because it was relevant to prove an element of the charged offense: the defendant both induced a person to part with money by the wrongful use or threat of force or fear. Answering Brief ("AB") at 27-29. The government further contends that the shooting showed that Mr. Cho was willing to follow through on his threats, making the victims' fear reasonable.

This Court should reject the government's contentions for several reasons. First, the uncharged shooting was not sufficiently similar to the charged acts of extortion to be admissible under Fed. R. Evid. 404(b). Second, it was not sufficiently probative of identity. Third, the evidence was substantially more prejudicial than the charged conduct about which the government introduced evidence; it was principally

relevant for its prejudicial impact including the implication that Mr. Cho possessed a violent and dangerous character.

The shooting was significantly dissimilar to the extortionate acts and the conduct charged as a carjacking. *United States v. Mayans,* 17 F.3d 1174, 1184 (9th Cir. 1994) (that the current charges and the prior bad acts all involved drug deals did not meet the similarity requirement). Substantial similarity is required even when the defendant raises an entrapment defense and the government seeks to prove predisposition. *United States v. Bramble,* 641 F.2d 681, 682-83 (9th Cir. 1981); *see also United States v. Mendoza-Prado,* 314 F.3d 1099, 1104 (9th Cir. 2002)(evidence defendant bragged about committing extortion not relevant to drug charges).

Here, the shooting was directed toward a moving vehicle and was committed by a single person. It was not similar to any of the charged conduct. *Cf. United States v. Schweihs,* 971 F.2d 1302, 1311-12 (7th Cir. 1992)(upholding admission of prior threats admitted under Rule 404(b)). The beating associated with the carjacking was committed by two persons, using a baseball bat, not a firearm. Moreover, it was undisputed that Cho had prior dealings with Yun Soo Shin, the victim,

and his partner, Joo Lee. It was not at all clear that Cho had any relationship with the driver or the girls in the shooting. The only evidence was that Cho approached the driver before he left. These dissimilarities required the exclusion of the evidence.

The government relies on out-of-circuit cases to contend that the uncharged acts were relevant to prove identity. This authority is readily distinguishable. For example, in *United States v. Tai,* 994 F.2d 1204 (7th Cir. 1993), the Seventh Circuit affirmed a district court's decision to admit evidence of a prior instance of extortion as relevant to identity. 994 F.2d at 1209. The government offered prior acts in which an attacker was employed by defendant Tai for the purpose of connecting the charged attack to the defendant. *Id.* at 1209-10. But here, there was no link to be made. *United States v. Tkhilaishvili,* 926 F.3d 1, 14-15 (1st Cir. 2019) is even more inapposite. There, the defendant's former girlfriend told the victim about the defendant's violent behavior; the court unsurprisingly ruled that it was admissible to show both the defendant's intent and the victim's state of mind. *Tkhilaishvili*, however, is readily distinguishable, because here none of the victims testified they knew about the uncharged shooting.

The uncharged shooting did not provide non-propensity based proof that Cho committed the assault on Yun Shin. The only common characteristic of the incidents was that both involved violent behavior. *See United States v. Luna,* 21 F.3d 874, 881-82 (9th Cir. 1994) (district court erred by admitting evidence of additional bank robberies for evidence of identity, where robberies were generic takeover robberies); *see also United States v. Schram,* 746 Fed. Appx. 688 (9th Cir. 2018).

The uncharged shooting also should have been excluded under Fed. R. Evid. 403 because its prejudicial impact substantially outweighed its probative value. The uncharged act was both more dangerous and more heinous than any of the charged conduct. If the jury believed Cho was the shooter, then it believed he fired randomly at a moving vehicle and struck an unarmed, uninvolved passenger. The videos of the wounded and crying victim, a young woman, were disturbing and painful to watch. The evidence was unfairly prejudicial, readily distinguishing this case from *Schweihs*, where the court admitted evidence of prior threats. 971 F.2d at 1310-12.

The uncharged shooting was substantially more violent and serious than the most violent event charged in the indictment, the

beating of Yun Shin. Otherwise, witnesses testified there were “rumors” or stories that Cho had been arrested with a gun and Yun Shin and Jung claimed to have seen him in possession of one. *E.g.,* 2-ER-403; 3-ER-480-81, 517-18. The government also presented evidence, which was undeniably admissible, that Cho was verbally aggressive in chat messages, and used his fists against several persons. This evidence is qualitatively different from that of the uncharged shooting.

Finally, and contrary to the government’s contention, the shooting was not inextricably intertwined with the charges. AB at 39. The shooting was not a part of the charged transaction, nor was it needed to allow the prosecutor to present a coherent story regarding the commission of the charged crimes. *See id.* It was not intrinsic to the charged offenses. *United States v. Anderson,* 741 F.3d 938, 949-50 (9th Cir. 2013); *see also United States v. Boem,* 2023 U.S. App. LEXIS 13245 (9th Cir. May 30, 2023)(sexual assaults were not inextricably intertwined with possession and production of child pornography, even though they involved the same victim). Sang’s testimony that he “heard” Mr. Cho had fired a gun did not render the uncharged shooting intrinsic to the underlying charges. *See* AB at 40.

The prejudicial impact of the evidence substantially outweighed any marginal probative value it carried. Accordingly, the district court abused its discretion under Fed. R. Evid. 404(b) and 403 in admitting this evidence.

### *2. The District Court Abused its Discretion in Admitting Evidence about the Grape Street Crips and Mr. Cho's Alleged Affiliation.*

The government contends that Mr. Cho's reputation for violence was relevant to the fear element of the extortion charge. AB at 51. Therefore, the government asserts, the evidence of Mr. Cho's posts of himself with other gang members, wearing gang-related insignia, and the expert testimony regarding gang affiliation and the Grape Street gang generally, was admissible. The government's assertion is not the end of the inquiry.

Evidence of gang affiliation is restricted, because it is inherently prejudicial. *See United States v. Abel*, 469 U.S. 45, 52-53 (1984); *United States v. Takahashi*, 205 F.3d 1161, 1164 (9th Cir. 2000). The Indictment did not charge and the evidence did not show that the offenses were gang-related, such that evidence of Cho's affiliation was intrinsic to the offenses. *Cf. United States v. Rodriguez,* 766 F.3d 970, 986-87 (9th Cir. 2014) (admitting evidence about the Mexican Mafia in

prison murder case where gang membership provided the motive for the crime).

The government was entitled to introduce evidence that the victims believed that Mr. Cho was gang affiliated at the time they were subject to the alleged extortion, because such evidence goes to the victim's fear. But, the expert testimony about the Grape Street gang and the inference therefrom that Mr. Cho was a member, should have been excluded. Likewise, the Instagram posts showing him with presumed Grape Street members and insignia were not probative of Cho's intent to instill fear.

The government's own evidence showed that the only witness to view the posts, Joo Lee, only looked at Cho's Instagram after the assault of his partner, Yun Shin, and after they decided to go to the police. The government's contention that Mr. Cho's Instagram posts "served to intimidate his victims not only by depicting defendant as willing to engage in violence, but also by portraying himself as having other gang members for muscle…" is thus poorly conceived. AB at 52. There was no showing that Mr. Cho used his Instagram posts to intimidate anyone. Rather, the evidence showed that government

witness Joo Lee looked specifically for Mr. Cho's Instagram account, and then provided the information about it to law enforcement agents. 2-ER-342. He had no knowledge of Mr. Cho's gang affiliation during the period of the charged extortion or before.

Further, the evidence does not support an inference that Cho would have anticipated the doumi drivers would know about his affiliation or view his Instagram posts. Mr. Cho did not communicate with the doumi drivers via Instagram. There was no evidence that he told drivers to check out his Instagram. Mr. Cho never referred to his Instagram in texts messages with the drivers—of which there were many. Rather, Cho and the drivers communicated using a messaging application similar to WhatsApp.

Despite the lack of relevance of the gang evidence, the court permitted the government's expert witness to testify about the Grape Street Crips, including that its members routinely engaged in robbery and extortion, in addition to drug trafficking and other crimes. That latter testimony provided an impermissible associational connection: that because Mr. Cho was affiliated with Grape Street, and because Grape Street members engaged in extortion, so too did Mr. Cho engage

in extortion. The photographs taken from Mr. Cho's Instagram simply added to the prejudice.

Neither the photographs nor the expert testimony were needed to understand the crime. *E.g.,* 2-ER-329-31. They did not bear on the credibility of any witness, nor provide a motive for the offense. *Cf. Abel,* 469 U.S. at 49 (fellow gang member testified on defendant's behalf). The court abused its discretion in admitting this unfairly prejudicial gang evidence.

*3. The Court's Errors Prejudiced the Defense.*

The court's errors were not harmless. The evidence of the shooting was qualitatively different from the government's other evidence. The evidence supported an inference that Cho fired shots at an occupied vehicle, and thus displayed reckless indifference to human life. The prejudice was multiplied by the video showing the gunshot victim, a young woman, bleeding and moaning in the vehicle before an ambulance arrived. This evidence supported a jury decision made on the basis of emotion and passion.

The limiting instruction was insufficient to ameliorate the prejudice stemming from the evidence of the shooting. Certainly, it

could not vitiate the prejudice from the video of the gunshot victim. And, the instruction broadly allowed consideration of the evidence on the subject of "the question of the defendant's intent, motive, opportunity, preparation, plan, knowledge, identity, absence of mistake, or absence of accident." 3-ER-764. But, as a dissimilar incident, the shooting was not admissible on intent or knowledge. *United States v. Mendoza-Prado,* 314 F.3d at 1103.

Likewise, the gang evidence substantially harmed the defense. The expert testimony was irrelevant to the charges, yet purported to identify Mr. Cho as a member of a large and dangerous street gang involved in extortion and robbery. This evidence, too, supported an improper inference that as a Grape Street member, Cho, too, engaged in extortion. The photographs of Cho with apparent gang members reinforced the expert testimony. There was no limit on the purpose for which the gang evidence could be considered. 4-ER-766.

The court's errors also prejudiced the defense, because of the quality of the government's evidence. Most of the government's victim witnesses benefited from their cooperation with the government: they all were undocumented aliens present in the country illegally and the

government provided them with immigration assistance. 2-ER-322, 440-41, 459, 572-73. Yet, most of them resisted admitting that they benefited from their cooperation. The government's principal witness, Yun Shin, the victim of the carjacking charge, gave trial testimony inconsistent with his prior statements to law enforcement, and then denied any such inconsistency. He also claimed he could identify Cho by his eyes.

It is reasonably probable that the admission of the uncharged shooting and the gang evidence affected the verdict. This Court must reverse the judgment.

## B. The District Court Erred in Disallowing Significant Cross-Examination.

The government contends that the defendant's claim must be reviewed for plain error, because the basis for the objection was not placed on the record. AB at 63. The government's argument lacks merit, because the district court prohibited speaking objections, directing that objections "should just consist of legal ground." 1-ER-162-63. The court did not want to hear argument on objections before the jury. The defense questions to which objections were sustained preserved the

issue. Accordingly, this Court should address the arguments presented in the opening brief using the abuse of discretion standard of review.

The government's argument that the questions sought to use hearsay statements for their truth fails. The questions were not offered to show whether or not a doumi brought drugs to a club or whether a club was to be raided – which would have been for the truth of the matter asserted. Rather, the defense sought to show that Lee received useful information from Mr. Cho. The defense also sought to impeach Lee's credibility, by showing that he received value from Cho and was not Cho's victim. The truth or falsity of the actual statement was irrelevant: the defense sought to cross-examine Lee on whether Cho provided information to contradict his testimony that he received nothing of value. The fact that such examination supported the defense theory does not control the question whether the statements were hearsay, or admissible as nonhearsay for the fact that they were made. Here, the district court erred in excluding the statements as hearsay and on relevance grounds.[1]

---

[1] The government contends that Mr. Cho has waived any challenge to the relevance ruling. AB at 65, n.15. The relevance of the questions is

## C. The District Court Procedurally Erred by Imposing a Two-Level Upward Adjustment for Vulnerable Victim.

The government contends that the district court correctly concluded that the defendant knew or reasonably should have known that the victims of the offense were unusually vulnerable compared to other victims of this type of offense. AB at 69-71. The government further contends that the vulnerable victim enhancement has been affirmed "based on considerations similar to those cited by the district court here." AB at 69. The government's contentions lack merit. The court relied on general characteristics which did not support the enhancement and disregarded evidence plainly differentiating the victims here from those who are unusually vulnerable. Further, the cases relied upon by the government to support its argument are inapposite.

General characteristics such as low income, lack of English-fluency or immigration status, cannot without more support imposition of the upward adjustment for a vulnerable victim. *United States v. Castaneda*, 239 F.3d 980, 982-83 (9th Cir. 2001); *United States v.*

---

obvious and was made so in the opening brief. The questions were asked in support of the defense theory and to impeach Lee.

*Castellanos,* 81 F.3d 108, 111 (9th Cir. 1996); *accord United States v. Medina-Argueta,* 454 F.3d 479, 482-83 (5th Cir. 2006)(undocumented aliens are not unusually vulnerable). The guidelines identify the elderly as the quintessential example of a vulnerable victim. U.S.S.G. §3A1.1, cmt. 2; *see United States v. McNamara,* 2025 U.S. App. LEXIS 14291 (6th Cir. June 9, 2025)(scam relied on vulnerabilities of the elderly like limited computer skills and diminished ability to distinguish honesty from fraud); *see also United States v. Prather,* 138 F.4th 963, 968, 975-76 (6th Cir. 2025)(defendant stole the identity of her mentally disabled nephew); *cf. United States v. Hess,* 106 F.4th 1011 (10th Cir. 2024)(not clear that victims' grief made it easier for defendants to pull off the fraud). But even elder status does not, without more, render a victim vulnerable. *See United States v. Anderson,* 349 F.3d 568, 572-73 (8th Cir. 2003).

Instead, to be classified as vulnerable, the victim must possess certain characteristics that make him unusually vulnerable within the universe of victims. The Second Circuit clearly explains this point, identifying three factors for consideration:

> (1) the "vulnerability of the victim must bear some nexus to the criminal conduct," (2) "the defendant

> generally must have singled out the vulnerable victims from a larger class of potential victims," and (3) "broad generalizations about victims based upon their membership in a class are disfavored where a very substantial portion of the class is not in fact particularly vulnerable to the crime in question."

*United States v. McCall,* 174 F.3d 47, 50 (2d Cir. 1998). In other words, the focus is on the victim's vulnerability rather than the status of being a victim in the first place. The fact that criminal always "tend to target their victims with an eye toward success in the criminal endeavor," does not render a victim unusually vulnerable. *Castellanos,* 81 F.3d at 110.

Here, the court concluded that the victims were vulnerable because they were (a) were part of an insular community, (b) undocumented, (c) did not speak English fluently, and (d) were unschooled in the American legal system. All of these characteristics are common to immigrants. Even considered together, they do not make the victims in this case more vulnerable than either immigrants in general or Korean immigrants in particular.

Importantly, all of the drivers in this case had been in this country for many years, during which time they worked and ran businesses. Joo Hun Lee had come to the United States in 2007 on a student visa. 2-ER-322, 347. Evidence was not presented about how long Yun Shin had

been in the United States, but he had a work permit. 2-ER-440. Young Kang had been in the United States for ten years, Sang Shin for 11. 2-ER-463, 3-ER-539. Young Jung had been in the United States for 21 years and worked in the club industry for six. 3-RT-510-11. While their English may not have been fluent, they were not illiterate or unsophisticated. The drivers posted rules in English for the doumis. And, they were well able to communicate with each other and ultimately with law enforcement.

Furthermore, the drivers and club manager did not come from a country where one might expect them to distrust law enforcement: they came from South Korea, another democracy. Accordingly, the government's reliance on *United States v. Bengali,* 11 F.3d 1207, 1212 (4th Cir. 1993) is misplaced. There, the defendant extorted funds from a family that had recently moved to the United States from Bulgaria (in 1991), a country that was then newly liberated from the Soviet Union. The Fourth Circuit noted the district court's reasoning:

> His family came to the United States about six months prior to this offense, and he really was not familiar with U.S. customs, when he finally reported it to the police he was surprised that the police were so supportive of him, and from the country where he came, apparently, corruption is commonplace and this is unfortunately the

> way of doing business, or so he thought. And so he was surprised he was treated so fairly by the criminal justice system and the law enforcement officers, and he said in an interview with the probation officer had he known the police would have been honest and supportive towards him in their handling of their case, he would have contacted them immediately when approached by the defendants.
>
> So I think his lack of knowledge about the conditions in the U.S. and about the way we do business here and handle crime made him particularly susceptible. So accordingly, I think that's a vulnerable victim.

11 F.3d at 1212.

Similar factual findings are utterly lacking here. Again, the drivers and club manager were not newcomers, but longtime residents of the United States. Nor was there evidence that the victims had a particular reason to fear law enforcement. *Cf. United States v. Mendoza,* 262 F.3d 957, 960-61 (9th Cir. 2001)(undocumented aliens had fled from prior immigration workplace raid); *United States v. Solorza,* 470 Fed. Appx. 669 (9th Cir. 2012) (undocumented immigrants whose status was known to ICE were vulnerable victims). Indeed, at the time of the offense conduct and before, it was well known that the Los Angeles Police Department did not participate in federal immigration enforcement; its goal is instead to ensure that immigrants are not

afraid to contact the LAPD if they are victims or witnesses. *See* 2025 *The Los Angeles Police Department, Federal Immigration Enforcement, Frequently Asked Questions,* available at https://www.lapdpolicecom.lacity.org/022525/BPC_25-049.pdf.

Finally, there were no special cultural factors that suggested they were particularly vulnerable to extortion. *Cf. United States v. Matsumaru,* 244 F.3d 1092, 1107-08 (9th Cir. 2001) (Japanese were unusually vulnerable to attorney, because the Japanese culture places complete trust in attorneys).

The government did not show the drivers and club manager were more vulnerable than the usual extortion victims. Small businessman and sole proprietors have been historically subjected to extortion. *E.g., United States v. Hill,* 645 F.3d 900 (7th Cir. 2011). That fact does not make them unusually vulnerable. Otherwise, any small business owner would be so classified. *See United States v. Robinson*, 119 F.3d 1205, 1219 (5th Cir. 1997) (vulnerable victim enhancement rejected where basis was that the victims were Asian business owners who kept large amounts of cash at their business establishments). Rather, "a vulnerable victim enhancement must stem from a personal trait or

condition of the victim, rather than the position he occupies or his method of doing business." *Id.* The fact that victims are targeted because they are known to have money does not support the enhancement. *Id.*; *accord Castellanos,* 81 F.3d at 110.

Additionally, there is no evidence that the victims were isolated from their community or unable to approach police. In fact, they did ultimately approach police. *Cf. United States v. Veerapol,* 312 F.3d 1128, 1130, 1132-33 (9th Cir. 2002)(unsophisticated, non-English speaking victim of labor trafficking was vulnerable where the defendant isolated her from her community, confiscated her passport, and threatened to have her arrested as an illegal alien were she to seek help from police).

Further, this Court should decline to rely on *United States v. Shyllon,* 10 F.3d 1 (D.C. Cir. 1993). There, the D.C. Circuit upheld application of the adjustment with little analysis. There, similar to here, the government argued that the victims were "somewhat unfamiliar with the English language and tax enforcement in the United States." 10 F.3d at 6. That, however, is not sufficient to uphold application of the adjustment in this

circuit. Moreover, the defendant in *Shyllon*, a tax auditor for the District, was responsible for selecting and auditing businesses for tax compliance and thereby extorted payments under color of law.

The district court's rationale for imposing the adjustment here would classify as a vulnerable victim virtually any immigrant business person or worker who is subject to extortion. *Castellanos,* 81 F.3d at 111. The drivers and club managers, while undocumented, were adult men successfully running businesses, albeit ones that were unregulated. They were not persons with any diminished mental acuity, and were not unusually physically vulnerable.

Accordingly, this Court should reverse Mr. Cho's sentence and remand for resentencing without the two-level upward adjustment for vulnerable victim.

## II. CONCLUSION

Based on the foregoing arguments and on the arguments in the opening brief, this Court should vacate the judgment of conviction. In the alternative, this Court should vacate the sentence and remand for

resentencing without the two-level upward adjustment for vulnerable victim.

Dated: January 16, 2026

Respectfully submitted,

/s/Karen L. Landau

______________________________

KAREN L. LANDAU
Attorney for Appellant
Daekun Cho

# CERTIFICATE OF COMPLIANCE

I certify that:

_x_ 1. Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Cir. R. 32-1, the attached reply brief is:

_x_ Proportionately spaced, has a typeface of 14 points or more and contains 4,121 words;

or is

__ Monospaced, has 10.5 or fewer characters per inch and contains _______words or ____ lines of text (reply briefs must not exceed 7,000 words or 650 lines of text); or

___ 2. The attached brief is not subject to the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because:

__ This brief complies with Fed. R. App. P. 32(a)(1)-(7) and is a principal brief of no more than 30 pages or a reply brief of no more than 15 pages. Ninth Cir. R. 32-1.

_/s/ Karen L. Landau

Karen L. Landau