Daekun Cho
Fed. Reg. No. 49441-510
FCI Herlong
Federal Correctional Institution
P.O. BOX 800
Herlong, CA 96113

*Pro Se*

RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS
MAY 29 2026
FILED
DOCKETED
DATE INITIAL

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**United States of America,**
Plaintiff-Appellee,

v.

**Daekun Cho,**
Defendant-Appellant.

No. 24-5185

D.C. No. 2:23-cr-00149-FLA-1

**PETITION FOR PANEL REHEARING AND REHEARING EN BANC**

10 May 2026

# INTRODUCTION

The memorandum disposition acknowledged that the identification underlying Count 57 was "improbable and inconsistent," yet held any evidentiary error harmless because the evidence supporting the broader extortion scheme was overwhelming. Mem. at 2–3. That analysis conflicts with this Court's harmless-error precedent, which requires a count-specific inquiry into whether the challenged error materially affected the verdict on the disputed count itself. See *United States v. Lopez*, 913 F.3d 807, 825 (9th Cir. 2019); *United States v. Seschillie*, 310 F.3d 1208, 1214 (9th Cir. 2002).

This case involved fifty-seven counts. Counts 1–56 were supported by multiple witnesses, financial records, Venmo payment histories, text-message evidence, and extensive corroboration. Count 57 was not. Count 57 depended almost entirely on a disputed eyewitness identification through a full-face mask, without physical corroboration, lineup procedures, DNA evidence, fingerprint evidence, or confirmed visual identification.

The panel nevertheless affirmed by relying principally upon the strength of unrelated extortion evidence. In doing so, the panel effectively insulated the Count 57 verdict from meaningful harmless-error review by permitting strong evidence on unrelated counts to substitute for careful examination of whether inflammatory evidence materially affected the jury's resolution of the disputed identification count.

Rehearing is warranted because the memorandum disposition conflicts with this Court's requirement that harmless-error review remain focused on whether the challenged error materially affected the verdict on the count actually in dispute.

# BACKGROUND

Appellant was convicted of fifty-seven counts, including extortion-related counts and Count 57 alleging aiding and abetting carjacking. Dkt. 133 at 1.

Counts 1–56 involved allegations of extortion and attempted extortion supported by multiple victims, payment records, financial transfers, communications evidence, and extensive corroboration. Count 57 was structurally different.

Count 57 depended almost entirely upon the testimony of Yun Soo Shin, who testified that one of two masked assailants wore a full-face skeleton mask and that he identified Appellant primarily through eyes and voice during the attack. Trial Transcript, Day 2 ("Tr. Day 2") at 30–31 (Dkt. 150). Shin could not see the attacker's face. *Id.* He also testified that he could not identify tattoos because he was on the ground shielding his head during the assault. *Id.* at 49.

On cross-examination, Shin was confronted with a police report describing both assailants as Black males. *Id.* at 43–46. Shin denied providing that description and testified that he told police one assailant was Black and one was Korean. *Id.* The defense witness who discussed the report acknowledged she had no independent recollection of the incident and relied upon a report authored by another officer who did not testify. Trial Transcript, Day 4 ("Tr. Day 4") (Dkt. 153).

Before the jury evaluated that disputed identification, however, it had already been exposed to extensive gang-affiliation and violence-related evidence, including gang-related Instagram photographs, firearms imagery, uncharged shooting videos, body-camera footage concerning the shooting aftermath, and testimony regarding alleged Grape Street Crips affiliation. Tr. Day 1 (Dkt. 149) at 175–179; Tr. Day 3 (Dkt. 151).

The panel assumed that admission of the gang-affiliation and shooting evidence may have been erroneous but concluded any error was harmless because the evidence of guilt was overwhelming. Mem. at 2.

# ARGUMENT

## I. THE PANEL APPLIED AN AGGREGATE SUFFICIENCY ANALYSIS RATHER THAN THE COUNT-SPECIFIC HARMLESS-ERROR REVIEW REQUIRED BY THIS COURT'S PRECEDENT.

This Court's harmless-error precedents require more than a generalized determination that the prosecution's case was strong overall.

*Lopez* requires the reviewing court to determine whether "it is more probable than not that the error did not materially affect the verdict." 913 F.3d at 825. *Seschillie* similarly requires "fair assurance that the verdict was not substantially swayed by error." 310 F.3d at 1214. Those standards require examination of whether the challenged evidence materially affected the jury's resolution of the disputed issue on the disputed count itself.

That inquiry did not occur here.

The memorandum disposition acknowledged that the Count 57 identification was "improbable and inconsistent." Mem. at 3. Yet the harmless-error analysis relied principally upon evidence concerning the broader extortion scheme: "multiple victims testified that they paid Cho out of fear, that Cho threatened or attacked them when they failed to pay." Mem. at 2. Those categories of evidence overwhelmingly concerned Counts 1–56.

Count 57 stood on fundamentally different evidentiary footing. Unlike the extortion counts, Count 57 lacked financial corroboration, communications evidence, payment histories, physical evidence, lineup procedures, DNA evidence, fingerprint evidence, or confirmed visual identification. The central disputed question on Count 57 was identity.

The panel nevertheless treated the case as a single aggregate evidentiary structure rather than asking whether the challenged inflammatory evidence materially affected the jury's evaluation of the disputed masked-attacker identification.

That approach conflicts with this Court's precedent.

In *United States v. Beckman*, the Court rejected harmless-error reasoning that bypassed the actual disputed credibility issue before the jury. 298 F.3d 788, 793 (9th Cir. 2002). The Court instead focused upon whether improperly admitted evidence "tipped the credibility balance" concerning the contested issue itself. *Id.*

The same principle governs here. The relevant question was not whether Appellant was generally guilty of wrongdoing. The question was whether inflammatory evidence materially affected the jury's resolution of the disputed identification underlying Count 57.

## II. THE GANG, SHOOTING, WEAPONS, AND MASK EVIDENCE OPERATED DIRECTLY UPON THE ONLY DISPUTED ISSUE ON COUNT 57: WHETHER THE MASKED ATTACKER WAS CHO.

The challenged evidence did not merely exist in the evidentiary background. It operated directly upon the central disputed issue in Count 57.

Before the jury evaluated the disputed masked-attacker identification, it had already seen gang-related Instagram photographs, firearms imagery, shooting videos, body-camera footage concerning a shooting aftermath, and testimony concerning alleged gang affiliation. Tr. Day 1 at 175–179; Tr. Day 3.

That evidence answered emotionally and inferentially the precise question the jury faced on Count 57: whether Appellant was the type of person who would commit the violent masked attack alleged by Shin.

This Court has recognized the danger of precisely that inferential process. In *United States v. Bagley*, the Court warned against "the human tendency to draw a conclusion which is impermissible in law: because he did it before, he must have done it again." 772 F.2d 482, 488 (9th Cir. 1985).

That danger was acute here because Count 57 rested upon a structurally fragile identification. Shin identified one assailant through a full-face mask primarily through eyes and voice. Tr. Day 2 at 30–31. There was no physical corroboration, no lineup procedure, no fingerprint evidence, no DNA evidence, and no confirmed visual identification.

Under those circumstances, the inflammatory evidence did not simply prejudice the jury generally. It risked replacing careful evaluation of a disputed identification with the impermissible inference that a person associated with gangs, shootings, weapons, and violence was more likely to have committed the charged attack.

The memorandum disposition did not address that count-specific prejudice analysis.

## III. THE IDENTIFICATION EVIDENCE WAS SUFFICIENTLY FRAGILE THAT THE PANEL COULD NOT DISMISS PREJUDICE THROUGH AGGREGATE HARMLESSNESS REASONING.

The memorandum disposition itself recognized the fragility of the Count 57 identification by describing it as "improbable and inconsistent." Mem. at 3.

That characterization matters.

The identification evidence involved:

- a masked attacker;
- identification primarily through eyes and voice;
- absence of physical corroboration;
- inability to identify tattoos;
- conflicting descriptions concerning the assailants; and
- absence of formal identification procedures.

The record further reflected that before any formal police identification procedure occurred, Shin's business partner privately showed him an Instagram photograph depicting Appellant wearing a skeleton mask. Tr. Day 1 at 172–173; Tr. Day 2 at 35–36.

This petition does not ask the Court at rehearing stage to resolve the constitutional implications of that sequence. The point is narrower but critical: the identification evidence was sufficiently vulnerable that the prejudicial effect of the inflammatory evidence could not properly be dismissed by reference to the overall strength of unrelated extortion evidence.

Once the panel acknowledged that the identification was "improbable and inconsistent," meaningful harmless-error review required focused examination of whether inflammatory evidence materially affected the jury's resolution of that disputed identification.

Instead, the memorandum disposition relied principally upon the broader strength of the prosecution's extortion evidence.

## IV. THE PANEL EVALUATED THE ERRORS IN ISOLATION RATHER THAN EXAMINING THEIR COMBINED EFFECT UPON COUNT 57.

The memorandum disposition separately concluded:

(1) that any error associated with gang-affiliation and shooting evidence was harmless; and

(2) that exclusion of portions of Exhibit 202 was harmless. Mem. at 2–4.

But Count 57 was decided through the interaction of those rulings.

Inflammatory character and violence evidence entered broadly. Defense contextual evidence concerning operational communications was restricted. The disputed masked-attacker identification stood at the center of the resulting evidentiary imbalance.

This Court has recognized that cumulative evidentiary effects may require relief even where isolated errors might individually appear harmless. See *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996).

The memorandum disposition did not meaningfully examine whether the combined effect of the challenged rulings materially affected the jury's evaluation of the disputed Count 57 identification.

## V. REHEARING EN BANC IS WARRANTED BECAUSE THE PANEL'S APPROACH CREATES A RECURRING PROBLEM IN MULTI-COUNT FEDERAL PROSECUTIONS.

The question presented extends beyond this individual case.

Multi-count federal prosecutions frequently combine:

- strongly corroborated financial or conspiracy counts;
- disputed identity-based violent-crime allegations; and
- extensive Rule 404(b), gang, weapons, or violence-related evidence.

If overwhelming evidence on some counts automatically renders inflammatory character evidence harmless on all counts, then meaningful harmless-error review in multi-count prosecutions becomes largely illusory. Strong counts will routinely insulate weaker counts from serious prejudice analysis.

*Lopez*, *Seschillie*, and *Beckman* point toward a count-specific inquiry focused upon whether the challenged evidence materially affected the jury's resolution of the disputed count itself. The memorandum disposition instead treated the prosecution's evidence as an aggregate whole.

En banc review is warranted to clarify whether harmless-error review in multi-count prosecutions must remain count-specific when the challenged evidence bears directly upon a disputed identification count resting on materially weaker evidentiary footing than the remaining counts.

## CONCLUSION

The memorandum disposition acknowledged that the Count 57 identification was improbable and inconsistent, yet affirmed by relying principally upon the strength of unrelated extortion evidence. That is not the count-specific harmless-error inquiry required by *Lopez*, *Seschillie*, and *Beckman*.

Rehearing is warranted to determine whether inflammatory evidence materially affected the jury's resolution of the disputed Count 57 identification itself rather than whether the prosecution's broader case was generally strong.

Appellant respectfully requests panel rehearing and rehearing en banc.

Dated: 10 May 2026

Respectfully submitted,
from FCI Herlong, California

/s/ Daekun Cho

Daekun Cho
Defendant-Appellant, Pro Se

FOOTNOTE

Appellant respectfully preserves additional constitutional, evidentiary, and sentencing issues for further review proceedings if necessary.

Daekun Cho
Fed. Reg. No. 49441-510
FCI Herlong
Federal Correctional Institution
P.O. BOX 800
Herlong, CA 96113

*Pro Se*

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**United States of America,**
Plaintiff-Appellee,

v.

**Daekun Cho,**
Defendant-Appellant.

No. 24-5185

D.C. No. 2:23-cr-00149-FLA-1

**APPELLANT DAEKUN CHO'S MOTION FOR LEAVE TO FILE LIMITED SUPPLEMENTAL PRO SE BRIEF CONCERNING ADDITIONAL CONSTITUTIONAL AND APPELLATE ISSUES IMPLICATED BY THE MEMORANDUM DISPOSITION**

10 May 2026

TO THE HONORABLE COURT:

Appellant Daekun Cho respectfully moves for leave to file a limited supplemental pro se brief concerning additional constitutional and appellate issues implicated by the Court's memorandum disposition filed April 15, 2026.

This request is narrowly tailored. Appellant does not seek wholesale reopening of the appeal or unlimited supplemental briefing. Rather, Appellant seeks limited supplemental presentation concerning issues closely intertwined with the memorandum disposition's harmless-error analysis and the disputed Count 57 identification.

# I. INTRODUCTION

The Court's memorandum disposition addressed several evidentiary issues, assumed possible error concerning gang-affiliation and shooting evidence, acknowledged that the Count 57 identification was "improbable and inconsistent," and affirmed principally through harmless-error analysis based upon the broader strength of the prosecution's extortion evidence. Mem. at 2–3.

Following issuance of the memorandum disposition, Appellant respectfully seeks limited supplemental presentation concerning constitutional and appellate issues closely connected to that harmless-error analysis and the disputed identification underlying Count 57.

This request is made in good faith and for orderly preservation and presentation purposes before issuance of mandate.

# II. PROCEDURAL BACKGROUND

Appellant was convicted following jury trial in the Central District of California on fifty-seven counts, including extortion-related counts and Count 57 alleging aiding and abetting carjacking.

Judgment was entered on August 21, 2024. Appellant timely pursued direct appeal before this Court.

On April 15, 2026, this Court issued a memorandum disposition affirming the judgment. Rehearing-related deadlines are presently active.

Appellant contemporaneously seeks leave to proceed pro se or alternatively for limited pro se filings concerning rehearing and preservation matters.

# III. BASIS FOR REQUESTED RELIEF

A. The Memorandum Disposition Clarified The Central Harmless-Error And Count-Specific Issues In The Case.

The memorandum disposition's harmless-error analysis clarified the central doctrinal posture of the appeal.

The disposition assumed potential evidentiary error concerning gang-affiliation and shooting evidence but concluded any error was harmless based principally upon the broader evidentiary strength of the prosecution's extortion case. Mem. at 2–3.

The disposition also acknowledged that the Count 57 identification was "improbable and inconsistent." Mem. at 3.

Appellant respectfully submits that limited supplemental briefing is warranted because additional constitutional and appellate issues are closely intertwined with those conclusions and with the Court's harmless-error analysis concerning Count 57.

B. The Proposed Supplemental Issues Are Closely Related To Issues Already Addressed By The Court.

Appellant does not seek to introduce unrelated matters or to reopen the appeal generally.

Rather, the proposed supplemental issues concern:

- count-specific harmless-error analysis;
- evidentiary spillover prejudice relating to Count 57;
- identification reliability and procedural concerns associated with the disputed masked-attacker identification;
- cumulative-error considerations arising from the interaction of multiple evidentiary rulings; and
- limited additional constitutional and evidentiary preservation issues closely connected to the foregoing matters.

These issues arise directly from the same evidentiary framework, harmless-error analysis, and disputed Count 57 identification already addressed in the memorandum disposition.

C. Limited Supplemental Presentation May Assist Orderly Appellate Review And Clarify Preservation Questions.

Appellant respectfully submits that limited supplemental presentation may assist orderly appellate review by clarifying the scope of preserved issues associated with the memorandum disposition's harmless-error analysis.

Permitting limited supplementation may also narrow future disputes concerning procedural presentation and exhaustion by ensuring that closely related constitutional and evidentiary concerns are identified before mandate-related proceedings conclude.

Appellant further represents that he seeks only limited supplemental presentation and is prepared to comply fully with all applicable Federal Rules of Appellate Procedure and Ninth Circuit Rules.

# IV. LIMITED NATURE OF REQUEST

Appellant does not seek wholesale reopening of the appeal, unrestricted briefing, or unnecessary delay.

Instead, Appellant respectfully seeks leave to submit a limited supplemental pro se brief narrowly directed toward:

- count-specific harmless-error analysis;
- spillover prejudice concerns affecting Count 57;
- identification-related reliability concerns;
- cumulative-error considerations; and
- associated preservation matters implicated by the memorandum disposition.

A proposed supplemental issue statement is attached for the Court's convenience.

# V. CONCLUSION

For the foregoing reasons, Appellant respectfully requests leave to file a limited supplemental pro se brief concerning additional constitutional and appellate issues implicated by the memorandum disposition.

Dated: 10 May 2026

Respectfully submitted,
from FCI Herlong, California

/s/ Daekun Cho

Daekun Cho
Defendant-Appellant, Pro Se

# PROPOSED SUPPLEMENTAL ISSUE STATEMENT

Appellant respectfully seeks limited supplemental presentation concerning the following issue areas closely connected to the memorandum disposition's harmless-error analysis and Count 57:

1. Whether the memorandum disposition's harmless-error analysis improperly relied upon aggregate evidentiary sufficiency across unrelated counts rather than conducting a count-specific inquiry concerning Count 57.

2. Whether extensive gang-affiliation, shooting, weapons, and inflammatory character evidence materially affected the jury's evaluation of the disputed masked-attacker identification underlying Count 57.

3. Whether the identification procedures and evidentiary presentation associated with Count 57 raised substantial reliability and due-process concerns warranting further appellate presentation.

4. Whether the combined effect of multiple evidentiary and procedural rulings materially affected the jury's resolution of Count 57.

5. Additional constitutional, evidentiary, and preservation issues closely intertwined with the foregoing matters and implicated by the memorandum disposition.

Appellant respectfully submits that limited supplemental presentation concerning these issues may assist orderly review and preservation before issuance of mandate.